IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

————————

## IN RE TERMINATION OF PARENTAL RIGHTS AS TO M.N.

————————

No. CV-24-0114-PR
Filed February 7, 2025

————————

Appeal from the Superior Court in Coconino County
The Honorable Angela R. Kircher, Judge Pro Tempore
No. S0300SV202100003
**REVERSED AND REMANDED**

Opinion of the Court of Appeals, Division One
257 Ariz. 374 (App. 2024)
**VACATED IN PART**

————————

COUNSEL:

Philip "Jay" McCarthy, Jr. (argued), Mangum Wall Stoops & Warden, P.L.L.C., Flagstaff, Attorneys for Adoption Choices of Arizona

Sandra L.J. Diehl, Coconino County Public Defender, Flagstaff, Attorneys for Child

Chad Joshua Winger (argued), Harris & Winger, P.C., Flagstaff, Attorneys for Father

Tom Jose, Timothy D. Keller, Phoenix, Attorneys for Amicus Curiae Center for the Rights of Abused Children

————————

JUSTICE BOLICK authored the Opinion of the Court, in which CHIEF JUSTICE TIMMER, VICE CHIEF JUSTICE LOPEZ and JUSTICES BEENE, MONTGOMERY, KING, and BERCH (Retired) joined.*

———————————

JUSTICE BOLICK, Opinion of the Court:

¶1        Delvagus I. ("Father") was identified as a potential father to M.N. and served with notice of adoption proceedings pursuant to A.R.S. § 8-106(G).  The juvenile court terminated Father's parental rights to M.N. because he did not file a notice of a claim of paternity with the Arizona putative fathers registry.  *See* A.R.S. §§ 8-106.01, -533(B)(6).

¶2        We hold that a man identified as a potential father under § 8-106(F) and served with notice under § 8-106(G) is not required to file a notice of a claim of paternity with the putative fathers registry.  Thus, a potential father's rights cannot be terminated under § 8-533(B)(6) for noncompliance with § 8-106.01.  The potential fathers statute, § 8-106, and the putative fathers statute, § 8-106.01, address separate classifications of fathers.  Each classification affords different rights and imposes distinct obligations that can serve as a discrete ground for termination.

¶3        We generally agree with the court of appeals' holding but do not adopt all of its reasoning.  We therefore vacate ¶¶ 13–16 of the opinion and leave the remainder intact.  We reverse and remand the juvenile court's termination order.

## BACKGROUND

¶4        Colette C. ("Mother") conceived M.N. with Father in summer 2020.  In March 2021, before M.N. was born, Mother and her boyfriend ("Boyfriend") initiated adoption proceedings with Adoption Choices of Arizona ("Choices").  Mother did not tell Choices about Father and asserted that Boyfriend was M.N.'s only possible father.

———————————

* Former Chief Justice Robert M. Brutinel recused himself from this case. Pursuant to article 6, section 3 of the Arizona Constitution, Justice Rebecca White Berch (Ret.) of the Arizona Supreme Court was designated to sit in this matter.

¶5            M.N. was born on March 23, 2021.  When Father appeared at the hospital to see M.N., he asked to take a DNA test.  The staff told Father that he had to take the test elsewhere.

¶6            The following month, on April 6, Mother and Boyfriend signed adoption consent forms through Choices.  On April 21, Choices petitioned the juvenile court for termination of parental rights on the ground that Mother and Boyfriend—the purported father—consented to termination and adoption.

¶7            At some point after Choices filed its termination petition, Mother identified Father as a potential father of M.N.  Choices then served Father a notice of the pending adoption, starting the thirty-day timeframe for him to file and serve a paternity action.  *See* § 8-106(G)(3).

¶8            On May 21, Father filed a paternity action in Maricopa County Superior Court.  On May 24, Choices amended its termination petition to include Father, alleging that he had failed to file a paternity action within 30 days of being served notice of the pending adoption.  *See* §§ 8-106(J), -533(B)(5).

¶9            On December 2, Choices filed a second amended petition, informing the juvenile court of Father's paternity action and that genetic testing confirmed by a 99.99% probability he was the biological father of M.N.  The petition added allegations that Father had abandoned M.N. and that he failed to file a notice of a claim of paternity with the putative fathers registry pursuant to § 8-106.01.  *See* § 8-533(B)(1), (6).

¶10           On February 4, 2022, Choices moved for partial summary judgment on the alleged termination grounds.  On March 25, Choices filed a third amended petition, adding allegations that Father suffered from mental illness/substance abuse and parental unfitness due to a felony conviction.  *See* § 8-533(B)(3)–(4).

¶11           On March 28, the juvenile court held oral argument on Choices' motion.  At the conclusion of arguments, the court denied summary judgment on the issue of abandonment but found by clear and convincing evidence that Father had failed to file with the putative fathers

registry. *See* §§ 8-106.01, -533(B)(6). Choices later moved to dismiss the remaining statutory grounds without prejudice, which the court granted.

¶12 On August 9, finding that termination was in M.N.'s best interests, the juvenile court terminated Father's parental rights. Father appealed.

¶13 The court of appeals reversed and remanded the juvenile court's termination order, concluding that the court improperly terminated Father's rights under § 8-533(B)(6) because it failed to consider his rights as a potential father under § 8-106. *In re M.N.*, 257 Ariz. 374, 375–76 ¶ 1 (App. 2024). The court further held that genetic testing established Father as a presumed legal father, and thus Father no longer met the definition of a putative father or potential father and did not have to file with the putative fathers registry. *Id.* at 375–76 ¶ 1, 378 ¶ 16.

¶14 We granted review to determine whether a potential father served with a § 8-106 notice is still required to file a notice of a claim of paternity with the putative fathers registry under § 8-106.01. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

¶15 We review the juvenile court's termination order for abuse of discretion. *Frank R. v. Mother Goose Adoptions*, 243 Ariz. 111, 114 ¶ 17 (2017). We review questions of law and statutory interpretation de novo. *Id.* at 114–15 ¶ 17.

¶16 In an adoption proceeding, the potential fathers statute imposes a duty on the mother to file a notarized affidavit listing all potential fathers. § 8-106(F). The potential father is entitled to notice of the proceedings, and the notice must state, in part, that the father has a right to consent or withhold consent to the adoption. § 8-106(G). The statute further informs him that it is his responsibility to initiate paternity proceedings within thirty days of notice. *Id.* If he fails to file a paternity action within thirty days, he is barred from bringing any action to assert an interest in the child. § 8-106(G)(7).

¶17        In 1994, the legislature established the putative fathers registry, adding § 8-106.01 to Title 8.  *See* H.B. 2462, 41st Leg., 2d Reg. Sess. (Ariz. 1994).  The putative fathers statute requires a man who claims to be the father of a child to file a notice of a claim of paternity before the birth of the child or within thirty days after the birth.  § 8-106.01(A)–(B).  Upon timely filing of a notice of a claim of paternity with the registry, the putative father "shall be served with the notice prescribed in § 8-106, subsection G." § 8-106.01(G).  His failure to file a notice of a claim of paternity with the registry results in waiver of his right to be notified of any proceedings regarding the child's adoption unless he proves by clear and convincing evidence that it was not possible to file a notice of a claim and that he filed it within thirty days after it became possible for him to file.  § 8-106.01(E).

¶18        Choices argues that § 8-106.01 required Father to file a notice of a claim of paternity with the putative fathers registry, regardless of whether Mother disclosed him as the potential father under § 8-106(G).  Choices contends that § 8-106.01(A) concerns "[a] person who is seeking paternity" and "who is the father or claims to be the father," and so by its terms applies to Father.  Because Father did not file a notice with the registry or comply with other requirements set forth in § 8-106.01(A), Choices contends his rights should be terminated.

¶19        Father responds that a man identified as a *potential* father and served with a § 8-106(G) notice, as he was, is not required to file a notice of a claim of paternity with the *putative* fathers registry because he is not a putative father.  Rather, because he complied with all statutory obligations required of a potential father, his parental rights were wrongly terminated.

I.     **The Potential And Putative Fathers Statutes Address Distinct Classifications Of Fathers.**

¶20        Looking to the relevant statutes, "[w]e determine the plain meaning of the words the legislature chose to use, viewed in their broader statutory context."  *In re Drummond*, 543 P.3d 1022, 1025 ¶ 5 (Ariz. 2024) (citation omitted) (internal quotation marks omitted).  "Absent ambiguity, we interpret statutes according to their plain language."  *Id.*  "When a statute's plain language is unambiguous in context, it is dispositive."  *Id.* And "[i]n construing a specific provision, we look to the statute as a whole and we may also consider statutes that are *in pari materia*—of the same

subject or general purpose—for guidance and to give effect to all of the provisions involved." *Id.* (alteration in original) (citation omitted).

**¶21** We reiterate that the statutes address "two categories of fathers who are entitled to notice of the filing of adoption proceedings," *David C. v. Alexis S.*, 240 Ariz. 53, 56 ¶ 14 (2016), and emphasize the legislature's addition of the putative fathers statute to the potential fathers statute. The legislature's enactment of the putative fathers registry added separate rights and responsibilities for unwed fathers in adoption proceedings where they are not identified as potential fathers, indicating its intent to treat potential and putative fathers differently. Moreover, § 8-533 provides distinct grounds for terminating a potential or putative father's parental rights; the applicable ground depends on the classification of the father. Under § 8-533(B)(5), a potential father's failure to file a paternity action within thirty days of completion of service, as § 8-106(G) requires, is a ground for terminating the parent-child relationship. Under § 8-533(B)(6), a putative father's failure to file a notice of a claim of paternity, as § 8-106.01 requires, is a ground for terminating the parent-child relationship. The fact that the legislature provided different grounds for termination underscores the distinction between the classifications.

**¶22** In *David C.*, we defined a potential father as "a man, identified by the mother in an affidavit, who is or could be the father of the child, but whose paternity has not been established." 240 Ariz. at 56 ¶ 14 (citing § 8-106(F)). And "[a] putative father is a man who is or claims to be the father of the child and whose paternity has not been established." *Id.* at 56–57 ¶ 17 (citing § 8-106.01(A)). We illustrated the distinct paths to protecting a father's rights and receiving notice of an adoption as follows:

> Section 8-106(G) provides notice when the mother identifies potential fathers, and § 8-106.01 is intended to provide notice when the putative father identifies himself. A potential father is entitled to notice under § 8-106(G) whether or not he registers with the putative fathers registry. A putative father must timely register to receive notice of the adoption proceedings or he waives notice and his consent is not required to finalize the adoption.

*Id.* at 57–58 ¶ 22.

**¶23**      Notice is the key distinction, which is consistent with the United States Supreme Court's discussion of a putative fathers registry in *Lehr v. Robertson*, 463 U.S. 248, 251 (1983). A mother identifying a potential father is the event triggering notice of the adoption proceedings to the potential father.[1] *See* § 8-106(F)–(G). And upon receipt of the notice, the potential father must initiate proceedings within thirty days or he loses his right to assert any interest in the child. § 8-106(G)(3), (7). By contrast, § 8-106.01(A) imposes a duty on the putative father, that is, the man "who is the father or claims to be the father," to "file notice of a claim of paternity and of his willingness and intent to support the child to the best of his ability with the state registrar of vital statistics in the department of health services." § 8-106.01(A). In other words, because the putative father is a man who has not been identified as a potential father, he must self-identify to receive notice of adoption proceedings. *See David C.*, 240 Ariz. at 57–58 ¶ 22. The child's birth is the event triggering the putative father's thirty days to identify himself and file a notice of a claim of paternity to receive notifications of the proceedings, though he may also file a notice of a claim of paternity before the child's birth. *See* § 8-106.01(B).

**¶24**      We previously suggested, somewhat confusingly, that a man can be both a putative and potential father. *See David C.*, 240 Ariz. at 58 ¶ 24. But we also recognized that "[t]he two statutes provide different ways of recognizing fathers' parental rights and relieving prospective adoptive parents from the obligation of obtaining a father's consent to the adoption." *Id.* at 57 ¶ 22. And because "[a] potential father is entitled to notice under § 8-106(G) whether or not he registers with the putative fathers registry," a potential father who received notice and complied with § 8-106(G) is "entitled to contest the adoption even if he failed to register [under § 8-106.01]." *Id.* at 57–58 ¶¶ 22–23. We concluded that "[w]hen a potential father was not personally served with notice because of the mother's wrongdoing but nonetheless complied with A.R.S. § 8-106(G), but not A.R.S. § 8-106.01, requiring registration serves no purpose other than to

---

[1]   If a potential father is identified without a notarized affidavit by mother—as in this case—the adoption agency is still required to notify the potential father of the adoption proceedings. § 8-106(G) ("Notice *shall* be served on each potential father as provided for the service of process in civil actions." (emphasis added)). The absence of a notarized affidavit should not serve as an incentive to forego providing a § 8-106(G) notice to a potential father.

reward mother's conduct by precluding the potential father from contesting the adoption." *Id.* at 58 ¶ 23.

**¶25** We here clarify that "putative" and "potential" fathers are distinct legal statuses granting and imposing different rights and duties. Section 8-106(G) is the statutory channel by which a potential father can assert his rights and initiate a paternity action to contest the adoption of his child (if he does so within thirty days). Successful filing of a notice of a claim of paternity in the putative fathers registry under § 8-106.01 requires that the father be notified of the adoption proceedings and also receive the notice prescribed in § 8-106(G). *See* § 8-106.01(G). Thus, a putative father who invokes his rights under § 8-106.01 and successfully files with the registry effectively assumes the rights and obligations of a potential father.

**¶26** It is clear, then, that our statutes provide distinct paths to establishing paternity—one established by mother's identification, the other by the father's initiation. At any given time, a father could be either putative or potential but is subject only to the requirements of the applicable category. We now examine the central issue in this case—whether a potential father is required to file with the putative fathers registry.

## II. A Potential Father Is Not Required To File With The Putative Fathers Registry.

**¶27** In an adoption proceeding, § 8-106(F) imposes a duty on the mother to identify a man known to her as the father or possible father of the child. Here, although Mother initially failed to identify Father, he was nonetheless subsequently identified as a potential father and made known to Choices. He was therefore entitled to notice under § 8-106(G), "whether or not he register[ed] with the putative fathers registry." *David C.*, 240 Ariz. at 57 ¶ 22. Father received this notice and initiated paternity proceedings. *See* § 8-106(G).

**¶28** Simply put, the notification of rights and responsibilities under § 8-106(G) precludes any requirement to file with the putative fathers registry under § 8-106.01. "It is a basic principle that courts will not read into a statute something which is not within the manifest intention of the legislature as indicated by the statute itself." *Mussi v. Hobbs*, 255 Ariz. 395, 402 ¶ 34 (2023) (quoting *Town of Scottsdale v. State ex rel. Pickrell*, 98 Ariz.

382, 386 (1965)). We "will not inflate, expand, stretch or extend a statute to matters not falling within its expressed provisions." *Id.* (internal quotation mark omitted) (quoting *City of Phoenix v. Donofrio*, 99 Ariz. 130, 133 (1965)). We decline to read into § 8-106 an additional requirement to file with the putative fathers registry.

¶29 Parental rights are fundamental, as Arizona law recognizes: "The liberty of parents to direct the upbringing . . . of their children is a fundamental right." A.R.S. § 1-601(A). This right is embodied in the United States Constitution and fully applies when the state takes action to terminate that right. *See Santosky v. Kramer*, 455 U.S. 745, 753 (1982) (recognizing that parents have a fundamental liberty interest "in the care, custody, and management of their child" that "does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State"). The state's decision to end a parent's right to his or her child implicates a fundamental right.[2] *See, e.g.*, *Troxel v. Granville*, 530 U.S. 57, 65 (2000). Under Arizona law, infringement of this fundamental right is subject to strict scrutiny. § 1-601(B) ("This state, any political subdivision of this state or any other governmental entity shall not infringe on these rights without demonstrating that the compelling governmental interest as applied to the child involved is of the highest order, is narrowly tailored and is not otherwise served by a less restrictive means.").

¶30 Reading §§ 8-106 and -106.01 together to create multiple requirements not only renders certain provisions superfluous but also raises due process issues. In clarifying the potential and putative father classifications, we emphasize that "[w]hen an unwed father demonstrates a full commitment to the responsibilities of parenthood by 'com[ing] forward to participate in the rearing of his child,' his interest in personal contact with his child acquires substantial protection under the due process clause." *Lehr*, 463 U.S. at 261 (second alteration in original) (internal citation omitted) (quoting *Caban v. Mohammed*, 441 U.S. 380, 392 (1979)). Procedural rules designed to protect the integrity and finality of adoptions should not become a trap for the unwary and a tool for the manipulative. The legislature created a dual system for asserting or establishing fatherhood,

---

[2] Although this is a private termination action, the state is effectuating it through the court system, rendering it state action. *See Shelley v. Kraemer*, 334 U.S. 1, 20 (1948).

and we are loath to transform it into a single, internally contradictory scheme.

**¶31** Choices argues that the court of appeals failed to recognize or cite *Frank R.*, in which we held that a man's failure to register with Arizona's putative fathers registry is a statutory ground for termination of parental rights. 243 Ariz. at 112 ¶ 1. Choices contends that *Frank R.* clearly provides for termination of Father's rights under § 8-533(B)(6) for failure to file with the putative fathers registry, and thus the juvenile court correctly determined Father's failure to comply with § 8-106.01's filing requirement established a ground for terminating his parental rights. But unlike *Frank R.*, Father assumed potential—not putative—father status and was thus subject to § 8-106, which does not include filing a notice of a claim of paternity with the putative fathers registry. We maintain now, as we held then, that § 8-106 "does not require compliance with § 8-106.01 to maintain a paternity action." *Id.* at 117 ¶ 29.

**¶32** Finally, while we recognize that either a potential or putative father can become a legal father, we emphasize that this opinion is limited to distinguishing the classifications under §§ 8-106 and -106.01.

**¶33** For these reasons, we hold that a potential father served with a § 8-106 notice is not required to file a notice of a claim of paternity with the putative fathers registry under § 8-106.01. Thus, Father's failure to file with the registry is not a ground for termination of parental rights.

## CONCLUSION

**¶34** In clarifying the potential and putative fathers statutes, we vacate ¶¶ 13–16 of the court of appeals' opinion. We reverse the juvenile court's order terminating Father's parental rights to M.N. and remand for any further appropriate proceedings consistent with this opinion.