NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO C.D.

No. 1 CA-JV 24-0176
FILED 04-10-2025

---

Appeal from the Superior Court in Maricopa County
No. JS21419
The Honorable Pamela S. Gates, Judge

**AFFIRMED**

---

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Appellant*

Ellsworth Family Law, P.C., Mesa
By Glenn D. Halterman
*Counsel for Appellees*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Judge James B. Morse Jr. and Judge D. Steven Williams joined.

---

**P E R K I N S**, Judge:

¶1 Clayton B. appeals the juvenile court's order terminating his parental rights to Claire (a pseudonym). For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 Melissa D. ("Mother") became pregnant with Claire in late 2022. Clayton presumed he was the father because he and Mother were dating. A few weeks before Claire's birth, Mother told Clayton she thought another man was the father. Claire's birth certificate did not name a father.

¶3 Mother and Clayton confirmed that he was Claire's father through an at-home paternity test soon after Claire's birth. But they did not attach their names to the test and Clayton's attorney told him it was insufficient to establish paternity in court.

¶4 Mother and Claire lived with Mother's parents ("Grandparents") while Clayton continued his career as a truck driver with the understanding that he and Mother would raise Claire together. Mother unexpectedly died in July 2023 while Clayton was working out of state. Grandparents became Claire's guardians, but she lived primarily with Mother's sister and her family ("Aunt," "Uncle," and "Cousins").

¶5 Clayton last saw Claire in August 2023 at Mother's memorial service. Clayton said he would remain in contact with Claire over the next few months as he tried to find work that would allow him to remain close to Claire, but he did not remain in contact except for a few text messages in September and October.

¶6 In September 2023, Clayton petitioned to establish paternity. Grandparents then petitioned to terminate Clayton's parental rights. The juvenile court held a contested termination adjudication hearing. Clayton, Mother's mother, and Uncle testified. Uncle testified he and Aunt provided for Claire's needs while Clayton had not assisted at all, Cousins viewed Claire as a sibling, and Aunt and Uncle's family was the only one Claire had known.

¶7 The court granted Grandparents' petition, finding a statutory ground for termination because Clayton failed to file a notice of claim of paternity within the requisite timeframe. The court also found termination was in Claire's best interests.

**¶8**        Clayton appeals the court's order terminating his parental rights and we have jurisdiction. A.R.S. § 8-235(A).

## DISCUSSION

**¶9**        To terminate the parent-child relationship, the court must find (1) at least one statutory ground under Section 8-533(B) by clear and convincing evidence, and (2) termination is in the child's best interests by a preponderance of the evidence. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149–50, ¶ 8 (2018).

**¶10**        When reviewing a juvenile court's termination order, we will accept the court's factual findings "if reasonable evidence and inferences support them." *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478, ¶ 30 (2023). "Because the juvenile court is in the best position to weigh evidence and assess witness credibility," we view the evidence in the light most favorable to sustaining the juvenile court's decision. *See id.* at 478–79, ¶¶ 30, 32 (cleaned up). We will affirm "the juvenile court's legal conclusions regarding the statutory ground for termination . . . unless they are clearly erroneous." *Id.* at ¶ 31. And the juvenile court's legal conclusions are clearly erroneous only if "as a matter of law no one could reasonably find the evidence to be clear and convincing." *Id.*

**¶11**        One statutory ground for termination of parental rights is when a "putative father fail[s] to file a notice of claim of paternity" with the putative fathers registry within 30 days after the child's birth. A.R.S. §§ 8-533(B)(6), -106.01(B). Clayton claims he is a potential father instead of a putative father. He argues Section 8-533(B)(6) is thus inapplicable to him and termination on this ground was improper.

**¶12**        A putative father "is a man who is or claims to be the father of the child and whose paternity has not been established," while a potential father is "a man, identified by the mother in an affidavit, who is or could be the father of the child, but whose paternity has not been established." *In re M.N.*, 563 P.3d 136, 140, ¶ 22 (2025).

**¶13**        Clayton does not claim that he has an affidavit from Mother. Instead, he argues that, under *David C. v. Alexis S.*, 240 Ariz. 53 (2016), he is excused from that affidavit requirement and is a potential father. *David C.* is an adoption case involving a mother who signed an affidavit falsely stating the child's father was unknown even though the father expressed interest in parenting the child. 240 Ariz. at 55, ¶ 2. The adoptive parents petitioned to adopt and published a notice of the pending adoption. *Id.* at ¶ 3. The father filed a paternity action the same day and amended his petition

as he learned more information about his child. *Id.* at ¶ 5. The court held the father was a potential father who timely filed and pursued his paternity action despite not being listed in an affidavit. *Id.* at 58, ¶ 24.

**¶14**        "Unlike *David C.*, this is a severance action," *Frank R. v. Mother Goose Adoptions*, 243 Ariz. 111, 117, ¶ 28 (2017), and different statutes apply. The court in *David C.* considered the interplay between two adoption statutes, neither of which is at issue here. *See David C.*, 240 Ariz. at 55, ¶ 7. And while the father in *David C.* diligently pursued his paternity action, Clayton did not—the court dismissed his case for a lack of prosecution.

**¶15**        The juvenile court correctly considered Clayton a putative father because he claimed to be Claire's father and his paternity had not been established. *See In re M.N.*, 563 P.3d at 140, ¶ 22. He was thus required to timely file a notice with the putative fathers registry to establish paternity. *See* A.R.S. § 8-106.01(B). Because he failed to do so within the 30-day "bright-line deadline," *Frank R.*, 243 Ariz. at 116, ¶ 24, the court did not abuse its discretion in finding a statutory ground for termination by clear and convincing evidence. A.R.S. § 8-533(B)(6).

**¶16**        Clayton also claims the court abused its discretion by finding termination was in Claire's best interests, arguing the court ignored parts of the record. "Termination is in the child's best interests if either: the child (1) will benefit from severance; or (2) the child will be harmed if severance is denied." *Alma S.*, 245 Ariz. at 150, ¶ 13. A child's prospective adoption can support a court's best-interests finding. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 5, ¶ 17 (2016).

**¶17**        The court found termination was in Claire's best interests because Claire would benefit from formalizing the parent-child relationship she shared with Aunt and Uncle. Testimony from both Clayton and Uncle support the court's findings. Uncle testified that he and Aunt intended to adopt Claire if the court terminated Clayton's parental rights. Clayton testified that Aunt and Uncle were "good people," and Claire and Cousins were forming sibling bonds. The record thus supports the juvenile court's finding that termination was in Claire's best interests.

**CONCLUSION**

¶18     We affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:          JR